IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-391-RJC-DCK

| | |
|---|---|
| JOSHUA GALLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY d/b/a ATRIUM HEALTH, and KORN FERRY HAY GROUP, INC., | ) AND ORDER ) ) ) |
| Defendants. | ) ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant The Charlotte Mecklenburg Hospital Authority D/B/A Atrium Health's Motion For Partial Dismissal Of The First Amended Complaint" (Document No. 29), "Defendant Korn Ferry (US)'s Motion To Set Aside Entry Of Default And Motion For Leave To Dismiss Out Of Time" (Document No. 40), "Defendant Korn Ferry (US)'s Motion To Dismiss" (Document No. 44), and "Defendant Atrium Health's Motion For Protective Order" (Document No. 64). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motions to dismiss be granted in part and denied in part; and will order that the motion for protective order be granted in part.

### I. PROCEDURAL BACKGROUND

Plaintiff Joshua Galle ("Plaintiff" or "Galle") initiated this action with the filing of a "Complaint" (Document No. 1) against "Atrium Health, Inc." on July 16, 2020. Charlotte Mecklenburg Hospital Authority d/b/a Atrium Health ("Defendant" or "Atrium Health") filed a

"...Motion For Partial Dismissal"(Document No. 8) and an "Answer" (Document No. 10) on August 24, 2020.[1] On September 10, 2020, the parties filed their "Joint Certification And Report Of F.R.C.P. 26(f) Conference And Discovery Plan" (Document No. 14).

On September 21, 2020, the undersigned allowed Plaintiff leave to file an amended complaint, and therefore, denied the then pending motion to dismiss as moot. See (Document No. 21). Plaintiff's "First Amended Complaint" (Document No. 22) was filed on September 22, 2020. The First Amended Complaint (the "Complaint") names Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health, Inc. and Korn Ferry Hay Group, Inc. as Defendants.

The crux of the Complaint is that Plaintiff is a "disabled veteran of the Armed Forces of the Unites States" who was allegedly "discriminated against and retaliated against by his employer, the Defendant." (Document No. 22, p. 2). The Complaint asserts claims against Defendant Atrium Health for "violation of the Uniformed Servicemembers Employment and Reemployment Rights Act" and for "disability/perceived disability discrimination/retaliation under the ADAAA." (Document No. 22, pp. 7-9). In addition, Plaintiff asserts claims against Atrium Health and Defendant Korn Ferry for "breach of contract and/or breach of public policy" and "negligent misrepresentation." Id. at pp. 8-12.

The Court entered a "Pretrial Order And Case Management Plan" (Document No. 25) on September 25, 2020. The "Pretrial Order…" included the following deadlines: discovery completion – May 17, 2021; mediation – May 31, 2021; dispositive motions – June 16, 2021; and trial – September 7, 2021. (Document No. 25).

---

[1] Defendant notes that the name in the caption, Atrium Health, Inc., was incorrect and should be substituted. (Document No. 8, p. 1, n. 1; Document No. 10, p. 1, n. 1).

Defendant "…Atrium Health's Motion For Partial Dismissal Of The First Amended Complaint" (Document No. 29) seeking dismissal of only Counts III and IV, and "…Atrium Health's Answer To First Amended Complaint" (Document No. 31) were filed on October 16, 2020.

On November 24, 2020, Plaintiff filed a "Motion For Entry Of Default" (Document No. 36) regarding Defendant Korn Ferry Hay Group, Inc., a wholly owned subsidiary of Korn Ferry, Inc., and the Clerk of Court promptly issued an "Entry Of Default" (Document No. 37) against Defendant Korn Ferry Hay Group, Inc.

On December 9, 2020, Defendant Korn Ferry Hay Group, Inc. made several filings, including its "…Motion To Set Aside Entry Of Default And Motion For Leave to File Motion To Dismiss Out Of Time"  (Document No. 40) and Corporate Disclosure (Document No. 39). Defendant notes that Korn Ferry Hay Group, Inc. became Korn Ferry (US), a distinct entity from its corporate parent, Korn Ferry, on January 1, 2019.  See (Document Nos. 38, 39, 40, 42, 44) "Defendant Korn Ferry (US)'s Motion To Dismiss" (Document No. 44) was then filed on December 16, 2020.

On June 2, 2021, "Defendant Atrium Health's Motion For Protective Order" (Document No. 64) was filed.  Most recently, "Defendants' Joint Motion For Stay" (Document No. 70) was filed with the Court.  Instead of allowing a stay, the undersigned extended the case deadlines as follows:  mediation report – August 20, 2021;  dispositive motions – September 17, 2021;  trial – January 3, 2022.  See (Document No. 75).

To date, the parties have failed to file a mediation report or request additional time to do so.  Nevertheless, the undersigned will *sua sponte* allow a short extension of the deadlines for a mediation report and dispositive motions.

The pending motions are now ripe for review and disposition.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint

4

in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

Pursuant to Fed.R.Civ.P. 55(c), "[t]he court may set aside an entry of default for good cause." "When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010) (quoting Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006)).

The Fourth Circuit has repeatedly found that "[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) (citation omitted); see also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967); Tazco, Inc. v. Director, Office of Workers Compensation U.S. Dep't of Labor, 895 F.2d 949, 953 (4th Cir. 1990).

### III.  DISCUSSION

**A.  Factual Background**

The Complaint describes Plaintiff Joshua Galle as "a decorated combat veteran having suffered a combat related injury during an initial combat tour to Iraq," who left college early to join the United States Marine Corps in 2004, after receiving news that two of his friends were killed in action in Iraq. (Document No. 22, p. 3). Plaintiff was "honorably discharged from the Marine Corps and re-entered civilian life, obtaining civilian employment." (Document No. 22, p.

5

4). According to the Complaint, Plaintiff "obtained his bachelors and masters level degrees" "[t]hrough his civilian employers." Id.

In or around April 2019, Plaintiff was "urged" by Jeff Bauer ("Bauer"), an agent of Defendant Korn Ferry (US), "to seek employment with Defendant Charlotte-Mecklenburg Hospital Authority." Id. "Defendants began interviewing Galle for the position titled 'Human Resources Strategic Partner,' where he would be working for Defendant Charlotte-Mecklenburg Hospital Authority in its Charlotte, North Carolina offices." Id. At the time, Plaintiff had no other contacts or business in North Carolina; he lived in Milton, Georgia and was employed by Anthem Blue Cross Blue Shield. Id.

Plaintiff avers that the interview process with Defendants was thorough, lasting about three (3) months, and included "copious discussions relating to his educational background and his military and work experience." Id. He "disclosed that he had a service connected disability, but was not asked to provide details about the disability." Id.

> On or about June 26, 2019, David Atkinson, Defendant's "Vice President of HR Strategy and Transformation," **provided a verbal offer for employment to Galle and confirmed this offer with an e-mail to Galle**. . . . **On the same day, Galle responded to Mr. Atkinson's e-mail, and accepted the offer**. . . . In this same e-mail to Mr. Atkinson, Galle asked that the employment agreement be reduced to writing and placed on Defendant's letterhead, so Galle could provide his 2-week notice resignation to his current employer, Anthem, and so he could begin shopping for a home in Charlotte, North Carolina.

(Document No. 22, p. 5) (emphasis added).

The Complaint further asserts that "Defendant provided Galle with written confirmation of his new employment with Defendant as its Human Resources Strategic Partner" on or about June 28, 2019. Id. See also (Document No. 23). Moreover, on or about July 1, 2019, "Galle executed various contracts" related to the terms of his employment and Defendant provided him "with a

6

'start date' of July 15, 2019, as Defendant's Strategic HR Business Partner; however, Galle was required to immediately begin performing tasks for Defendant." (Document No. 22, p. 6). Based on the foregoing, Plaintiff promptly gave his "two weeks notice" to his employer in Georgia and began preparations to move to Charlotte with his wife and children. Id.

As part of his preparations to move, on July 8 and 9, 2019, Plaintiff corresponded with Mary Underdown ('Underdown"), an employee of Defendant who was assisting the Galles with finding temporary housing in Charlotte. Id. Plaintiff alleges that Underdown ceased all communications with him after he informed her that "he would need to be accommodated with a first-floor apartment due to his disability" . . . as well as a work environment "with a first-floor office, or office accessible without use of stairs." Id. Two days later, and "just two (2) business days before Galle was to start his new position with Defendant – Mr. Atkinson informed Galle that Defendant terminated his employment." Id.

Plaintiff alleges that he was terminated "because of his request for an accommodation relating to his service connected disability," although Mr. Atkinson denied that accusation and told Plaintiff it was because he "did not hold a degree from an accredited university." (Document No. 22, p. 7).

Subsequently, Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") on October 31, 2019.[2] (Document No. 22, p. 3). He "was issued a right-to-sue letter by the EEOC on May 6, 2020." Id. As noted above, Plaintiff's original Complaint was then timely filed on July 16, 2020. (Document No. 1).

---

[2] It does not appear that Plaintiff has attached the relevant EEOC documents to his Complaint(s), or otherwise filed them in this case.

7

**B. Defendant Atrium Health's Motion To Dismiss**

Defendant Atrium Health now seeks partial dismissal of the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Document Nos. 29, 30). Specifically, Defendant seeks to dismiss the Count III breach of contract and/or breach of public policy claim, and the Count IV negligent misrepresentation claim. Id. Defendant suggests these claims must fail because Plaintiff does not "allege sufficient facts to establish that Plaintiff's conditional offer of employment constituted an actual employment contract thereby creating an employment relationship that Defendant allegedly breached." (Document No. 30, p. 2).

Defendant's review of the facts focuses on the request for written confirmation of employment Plaintiff made on June 26, and then received on June 28, 2019. (Document No. 30, p. 3) (citing Document No. 22, pp. 5-6 and Document No. 23). Defendant emphasizes that the written confirmation "clearly stated that Plaintiff's offer of employment was 'contingent upon the completion of a successful background check and health assessment.'" (Document No. 30, p. 3) (citing Document No. 23, p. 2). Defendant then states that it "rescinded Plaintiff's conditional offer of employment pursuant to an unsuccessful background check, which revealed that Plaintiff did not possess the level of education required for the role." Id. (citing Document No. 22, pp. 6-7).

**1. Breach of Contract and/or Breach of Public Policy**

Defendant argues that "no agreement creating an employment relationship ever existed, and thus, at no time did Plaintiff ever actually work for Atrium Health." (Document No. 30, p. 4). Regarding Count III, Defendant first asserts that Plaintiff has not alleged sufficient facts to support the formation of a valid and enforceable contract and then suggests that even if the parties did form a contract it was "terminable at will." (Document No. 30, p. 5) (quoting Norman v. Tradewinds

8

Airlines, Inc., 286 F.Supp.2d 575, 585 (M.D.N.C. 2003) (quoting Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331 (1997) ("Unless the employer and employee have entered into a contract specifying a definite term of employment, the employment relationship 'is presumed to be terminable at the will of either party without regard to the quality of performance of either party.'"))). Defendant contends that the confirmation letter attached to the Complaint makes clear the conditional and at will nature of the employment offer, and does not specify any definite term of employment. (Document No. 30, p. 6).

Defendant argues that "because Plaintiff's employment with Defendant had not yet commenced, his alternatively pled breach of public policy claim also fails." (Document No. 30, p. 7). Defendant acknowledges "a public policy exception to the employment at will doctrine for employees who have been *wrongfully discharged* for an unlawful reason or for a reason which offends the public good," but asserts that here Plaintiff "could not be discharged, let alone wrongfully discharged, because no contractual employment relationship existed." (Document No. 30, pp. 7-8).

Defendant concludes that Plaintiff's Count III breach of contract and/or breach of public policy claim should be dismissed. (Document No. 30, p. 9).

In response, Plaintiff notes that North Carolina recognizes three exceptions to the presumption that an employment relationship is "at will" and an employee can be terminated at any time for any reason. (Document No. 34, p. 4). These are: (1) employment pursuant to a contract for a definite term of employment; (2) termination for wrongful reasons, such as discrimination based upon age, sex, race, or disability; and (3) violation of public policy. Id. (citing Wuchte v. McNeil, 130 N.C.App. 738, 740 (1998); 42 U.S.C. § 12101 *et seq.*; and N.C.Gen.Stat. § 95-240 *et seq.*

Plaintiff first asserts that his "Agreement regularly refers to his employment as being 'full time,' for '12 months.'" (Document No. 34, pp. 4-5). Plaintiff contends this language is sufficiently definite, but in the alternative, it is at least enough to merit "inquiry through the completion of discovery in this matter." (Document No. 34, p. 5). Plaintiff goes on to emphasize that he "<u>accepted</u> Defendant's offer of employment based on assertions of the contract," "immediately began work for Defendants," and "began the process of relocation in reliance on [the] offer." <u>Id.</u>

Plaintiff further argues that pursuant to public policy in North Carolina, veterans are entitled to preferential treatment "not only in the hiring process, but also in the retention process." (Document No. 34, p. 6). As such, Plaintiff asserts that he has properly pled a violation of public policy that should be permitted to proceed to discovery. <u>Id.</u>

In reply, Defendant Atrium Health refutes Plaintiff's contention that there was an agreement on a "definite term" of employment. (Document No. 35, pp. 1-2) (citing Document No. 23, pp. 2-5). Defendant argues that the "First Amended Complaint simply does not support the formation or existence of any valid or enforceable contract between Plaintiff and Atrium Health, and as such, Plaintiff's breach of contract claim fails." (Document No. 35, p. 2). Likewise, Defendant concludes that the breach of public policy claim also fails. <u>Id.</u>

Contrary to Plaintiff's allegations and arguments, Defendant asserts that he "never actually began working for Atrium Health," so he "could not be discharged, let alone, wrongfully discharged, because no contractual employment relationship existed between the parties." <u>Id.</u>

Applying the applicable standard or review set forth above and viewing the Complaint in the light most favorable to Plaintiff, the undersigned finds that the breach of contract and/or public policy claim should survive at this stage. The undersigned is persuaded that Plaintiff's allegations

are sufficient to support a plausible claim(s) that should be subjected to discovery and further development of the record. For example, the Complaint clearly alleges that Defendant provided a verbal *offer* for employment on June 26, 2019, that Plaintiff *accepted* that day, and was subsequently confirmed by email from Defendant. (Document No. 22, p. 5). Moreover, Plaintiff alleges that he "immediately" began working for Defendant. (Document No. 22, p. 6). Although Defendant vehemently denies these and other allegations, at this stage the undersigned must accept them as true.

Based on the foregoing and Plaintiff's arguments, the undersigned will recommend that the motion to dismiss be denied, without prejudice to Defendant asserting similar arguments in a later dispositive motion.

**2. Negligent Misrepresentation**

Defendants seek dismissal of the Count IV negligent misrepresentation claim based on Plaintiff's purported failure "to allege any facts sufficient to support Plaintiff's alternatively pled negligent misrepresentation claim." (Document No. 30, pp. 9-10) (citations omitted). Defendant notes that

> The tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information.

(Document No. 30, p. 9) (quoting <u>Schlieper v. Johnson</u>, 195 N.C. App. 257, 262–63 (2009).

Defendant contends that Complaint "does not contain any allegations regarding what false information Defendant purportedly supplied to Plaintiff, nor does it establish any facts suggesting a pecuniary interest on the part of Defendant." (Document No. 30, p. 10).

11

Plaintiff argues in response that Defendants negligently provided false information to him during the interview process. (Document No 34, pp. 6-7). Plaintiff then summarizes his position as follows:

> During the interview process Plaintiff produced his curriculum vitae clearly relating the institution from which he obtained his master's degree. Furthermore, "Galle engaged in copious discussions relating to his educational background and his military and work experience." Compl. ¶ 23. After he explained where his degree came from Defendants assured him that the degree and qualifications were sufficient for the position. Further, upon reducing the offer to writing, Defendants' negligently provided false information about the background check, further solidifying Plaintiff's acceptance. Defendant owed a duty of care to Galle, Galle relied on Defendants' misrepresentations of information which they had sole control over. Defendants are liable to Galle for their negligent misrepresentations.

(Document No. 34, p. 7).

In reply, Defendant re-asserts that Plaintiff's negligent misrepresentation claim "fails to allege any facts sufficient to support Plaintiff's negligent misrepresentation claim, and thus, it fails to meet the requisite pleading and plausibility requirements set forth in *Twombly*, *Iqbal*, and Rule 9(b)." (Document No. 35, p. 3). Defendant contends that Plaintiff's Response includes new facts not included in the Complaint that cannot be considered here. Id. Defendant concludes that "it is Plaintiff, not Atrium Health who had exclusive control and a duty of care to provide accurate information regarding his degree and qualifications, which he misrepresented on his resume and during the interview process." (Document No. 35, p. 3).

Unlike the Count III claim, the undersigned is not persuaded that Plaintiff has alleged sufficient factual content to support a plausible claim for negligent misrepresentation. Even viewing the Complaint in the light most favorable to Plaintiff, there is insufficient factual content

to support negligent misrepresentation. See (Document No. 22). It is still unclear to the undersigned what allegedly false information was provided to Plaintiff. Id.

The undersigned will, therefore, respectfully recommend that the motion to dismiss be granted as to Count IV.

**C. Defendant Korn Ferry (US) Motions To Set Aside Default and to Dismiss**

Defendant Korn Ferry (US) ("KFUS") first moves to set aside the Clerk of Court's "Entry Of Default" (Document No. 37) and for leave to file a motion to dismiss. (Document No. 40). Defendant KFUS notes that this Court "may set aside an entry of default for good cause" and has "broad discretion" to do so. (Document No. 41, pp. 7-8) (citing Fed.R.Civ.P. 55(c) and Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967)).

In support of its first motion, KFUS persuasively addresses the Payne factors set forth in the above standard of review. (Document No. 41, pp. 8-15).

To start, KFUS asserts that it has multiple meritorious defenses that warrant dismissal of this action. (Document No. 41, pp. 8-12). Most notably, KFUS argues that the Amended Complaint lacks sufficient factual allegations to satisfy Fed.R.Civ.P. 9(b) or 12(b). (Document no. 41, pp. 8-9). Defendant KFUS observes that the factual allegations against it are contained in one (1) paragraph, and that statement is unrelated to the claims made against it in Counts III and IV. (Document No. 41, p. 9) (citing Document No. 22, p. 4). KFUS further argues that there is no alleged contract between it and Plaintiff, and that there cannot be a viable negligent misrepresentation claim because it owed no tort duty to Plaintiff. (Document No. 41, pp. 10-12) (citations omitted).

Defendant KFUS goes on to make shorter, but equally compelling arguments that: (1) it acted expeditiously in responding to this action; (2) it has no history of dilatory action; (3) its

default was unintentional;  and (4) Plaintiff will suffer no prejudice if this motion is allowed. (Document No. 41, pp. 12-15).

Shortly after moving to set aside the Entry of Default and seeking leave to move to dismiss, Defendant KFUS filed its "… Motion To Dismiss" (Document No. 44) re-asserting and expanding on Defendant's rationale for dismissal provided in the previous motion.  Put most succinctly, KFUS argues that Count III of the Complaint fails because it does not state a plausible claim for relief;  the Complaint does not allege any contract between Plaintiff and KFUS;  and its breach of public policy claim cannot be asserted against KFUS because it is not alleged to have employed Plaintiff.  (Document No. 45, pp. 9-11).

Regarding Count IV, KFUS argues that the claim does not satisfy the Rule 9(b) heightened pleading standard and does not state a plausible entitlement to relief.  (Document No. 45, pp. 13-15).  KFUS contends that allegations that it "urged Plaintiff to seek employment" with Atrium Health and/or that it made "continuous representations" about a position with Atrium Health are insufficient to support the claims against it.  (Document No. 45, p. 13) (citing Document No. 22, ¶ 21).

On January 6, 2021, Plaintiff Galle filed a combined response to Defendant KFUS's motions.  See (Document No. 49).  In first arguing against setting aside the Entry Of Default and allowing KFUS to file a motion to dismiss, Plaintiff ignores KFUS' arguments, particularly its comprehensive discussion of the Payne factors.  As such, the undersigned does not find Plaintiff's response persuasive or helpful.

Regarding dismissal, Plaintiff's arguments again fail to persuade the undersigned. (Document No. 49, pp. 7-10).  To begin, Plaintiff suggests the Court should apply an "expansive definition of *employer* under the requisite veteran protection laws."  (Document No. 49, p. 7)

14

(citing 38 U.S.C. § 4303(4)(A)(v) ("a person, institution, organization, or other entity that has denied initial employment in violation of section 4311")).  This definition appears inapplicable because Plaintiff does not allege that Defendant KFUS "denied initial employment."  Plaintiff simply fails to allege any action by KFUS that could reasonably be construed as employing Plaintiff, entering into a contract with Plaintiff, breaching a contract or public policy, or providing false information.

In short, neither the Complaint, nor Plaintiff's response, provides any support for the allegation that KFUS should be construed as Plaintiff's employer or that it entered into a contract with Plaintiff.  See (Document No. 22;  Document No. 49, p. 7).  Likewise, the undersigned agrees with Defendant KFUS that there are also no plausible allegations to support a violation of public policy or negligent misrepresentation.

At most, the Complaint alleges that KFUS's agent, Jeff Bauer, urged or encouraged Plaintiff to apply for employment with Atrium Health.  See (Document No. 22, p. 4).  Even accepting that allegation as true, such factual content, without more, is simply insufficient to support *any* of Plaintiff's claims against KFUS.

Based on Defendant KFUS's arguments and legal authority, the undersigned will respectfully recommend that the Entry Of Default (Document No. 37) be set aside, and that "Defendant Korn Ferry (US)'s Motion To Dismiss" (Document No. 44) be accepted as timely filed and granted.

**D.  Defendant Atrium Health's Motion For Protective Order**

Defendant's "…Motion For Protective Order" seeks to bar or limit certain topics included in "Plaintiff's Rule 30(b)(6) Notice Of Deposition…" (Document No. 64-1).  (Document No. 64).

Specifically, the motion requests an Order "barring Plaintiff from proceeding on topics 4-7, 12-15, and 17" and "moves this Court to include modifications to Topics 1-3, 8-11, and 16." Id.

Based on "Defendant's Reply…" it now appears that the parties have narrowed their dispute to one topic – Topic No. 17. See (Document No. 72, p. 3; Document No. 72-2, pp. 2-3). "Due to the on-going disagreement over Topic No. 17, Atrium Health continues to pursue its Motion for Protective Order." Id. Defendant describes Topic No. 17 as "a fishing expedition to establish Atrium Health as a North Carolina governmental institution." (Document No. 72, p. 4) (citing Document No. 64-1, ¶ 17). Topic No. 17 specifically seeks:

> A corporate representative who has, or who has spoken to the requisite individuals to obtain, the knowledge and information available to the Company regarding the oversight provided by local, county and state officials—specifically, the details of the relationship between the Mecklenburg Board of County Commissioners and Company executives.

(Document No. 64-1, pp. 5-6).

Defendant argues in support of its motion that "Topic 17 is wholly unrelated to any of Plaintiff's allegations or claims or Atrium Health's defenses in this lawsuit." (Document No. 65, p. 6).

In opposition, Plaintiff contends that Topic 17 "is one of extraordinary importance." (Document No. 69, p. 7). Plaintiff argues that he "is entitled to discern an understanding of the role Defendant's agents play with its county government, especially as it pertains to employment matters such as the veteran preference policy and the benefits Atrium employees enjoy, related to Mecklenburg County veteran services." (Document No. 69, p. 8) (citing Document No. 22, p. 10) (citing N.C.Gen.Stat. §126-80).

In its reply, Defendant argues that it "is not a governmental agency or institution governed by Chapter 126 of the North Carolina General Statutes, which speaks to policies for the State of

North Carolina's departments, agencies and institutions." (Document No. 72, p. 4) (citing N.C.Gen.Stat. § 126-80). "Rather, Atrium is a municipal hospital authority organized under the North Carolina Hospital Authorities Act." Id. (citing Document No. 31, ¶ 2). Defendant asserts that it "may adopt its own personnel policies" and "is not bound by the North Carolina Human Resources Act." (Document No. 72, p. 5).

The Court commends the parties' efforts in narrowing the issues in dispute. Based on Defendant's arguments, the undersigned will grant the motion for protective order in part – as to the remaining issue of Topic No. 17. The undersigned is not persuaded that information regarding the "details of the relationship between the Mecklenburg Board of County Commissioners and Company executives" is relevant to either party's claims or defenses. See Fed.R.Civ.P. 26(b).

Based on the foregoing, Defendant Atrium Health's motion will be granted and Defendant will not be required to provide a representative to address the information requested in Topic No. 17.

## IV. RECOMMENDATIONS AND ORDER

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant The Charlotte Mecklenburg Hospital Authority D/B/A Atrium Health's Motion For Partial Dismissal Of The First Amended Complaint" (Document No. 29) be **GRANTED in part** and **DENIED in part**, as described herein.

**IT IS FURTHER RECOMMENDED** that "Defendant Korn Ferry (US)'s Motion To Set Aside Entry Of Default And Motion For Leave To Dismiss Out Of Time" (Document No. 40) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that "Defendant Korn Ferry (US)'s Motion To Dismiss" (Document No. 44) be **GRANTED**.

**IT IS ORDERED** that "Defendant Atrium Health's Motion For Protective Order" (Document No. 64) be **GRANTED in part** as described herein.

**IT IS FURTHER ORDERED** that the case deadlines are extended as follows: mediation report – **September 17, 2021**; dispositive motions – **September 27, 2021**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED AND ORDERED**.

Signed: August 31, 2021

David C. Keesler
United States Magistrate Judge

18

Case 3:20-cv-00391-RJC-DCK Document 76 Filed 08/31/21 Page 18 of 18