UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00391-RJC-DCK

| | |
|---|---|
| JOSHUA GALLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| THE CHARLOTTE-MECKLENBURG | ) |
| HOSPITAL AUTHORITY d/b/a ATRIUM | ) |
| HEALTH, INC., | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. (DE 89). This matter has been fully briefed, and on July 20, 2022, the Court conducted an oral hearing. The Court has reviewed the pleadings, filings, exhibits thereto, and applicable law and has considered the parties' briefed and oral arguments. For the reasons stated herein, Defendant's Motion for Summary Judgment is **GRANTED**.

I. BACKGROUND

A. Procedural Background

On July 16, 2020, Plaintiff Joshua Galle ("Plaintiff" or "Mr. Galle") filed suit against Defendant Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health ("Defendant" or "Atrium Health") for unlawfully terminating his employment based on his military service and combat connected disability. (DE 22). Plaintiff's Amended Complaint, filed September 22, 2020, included four claims. (DE 22). However, Defendant filed a motion to dismiss counts three (breach of contract and/or breach of public policy) and four (negligent misrepresentation) of the Amended Complaint, (DE 29), which this Court granted in part as to the fourth claim. (DE 84).

On January 25, 2022, Defendant filed the instant motion for summary judgment as to the

three remaining claims: (1) violation of the Uniformed Servicemembers Employment and Reemployment Rights Act ("USERRA"), (2) disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), and (3) breach of contract and/or breach of public policy. (DE 89).

  **B.**   **Factual Background**

  Atrium Health is a municipal hospital located in Charlotte, North Carolina. (DE 90-15). In early 2019, Atrium Health hired David Atkinson to restructure its HR department. (DE 90-2 (Atkinson Dep.) at ¶¶1–3). Mr. Atkinson's job was to build a team of Human Resource Strategic Business Partners ("HR-SBP") by hiring professionals with a higher level of education, talent, and expertise. (*Id.* at ¶7). The HR-SBPs are responsible for advising Atrium Health's senior executives. (*Id.*; DE 90-2 at 11). As the leader of the HR-SBP team, Mr. Atkinson was responsible for hiring and firing. (DE 90-2 at ¶3). To find quality candidates, Mr. Atkinson used the recruiting firm Korn Ferry Hay Group, Inc. ("Korn Ferry") to provide candidates. (*Id.* at ¶5). The job description for the HR-SBP position required, at a minimum, a "Masters' degree in business administration, HR, organization development or related fields." (DE 90-2 at 11).[1] Atrium Health considers a master's degree to be an advanced graduate degree involving a dedicated course of study, typically requiring a minimum of 30 or more credit hours from an accredited institution of higher learning. (DE 90-2 at ¶8). Typically, to receive a graduate degree, a bachelor's level degree is also required, either as a separate degree or as part of an integrated course. (*Id.*).

  In March 2019, Korn Ferry identified Mr. Galle, a former Marine who served in the Global War on Terror, as a candidate for the HR-SBP position and recommended that Atrium Health interview him. (DE 90-2 at ¶11; DE 91 at 2). As part of the agreement between Atrium Health

---

[1] Mr. Galle had a copy of the requirements of the position before he interviewed with Atrium Health. (DE 90-3 at 31).

and Korn Ferry, Korn Ferry was responsible for locating and contacting candidates that were qualified for the position. (DE 90-2 at ¶5 & FN 2). After reviewing Mr. Galle's resume, and based on Korn Ferry's recommendation, Mr. Atkinson decided to interview Mr. Galle. (DE 90-2 at ¶11). Mr. Galle's resume states, under the "Education & Certifications" section, that he has a "Master of Business Administration, Human Resources Management, 2015" and a "Bachelors, Human Resources, 2014" from the United States Institute of Applied Knowledge. (DE 90-7 at 18).

During the interview process, Mr. Galle disclosed that he was a disabled combat veteran.[2] (DE 90-2 at ¶12; DE 22 at ¶23). Atrium Health was impressed with Mr. Galle's experience and credentials, including his impressive military background, and, ultimately, extended a verbal offer of employment via telephone on June 26, 2019. (DE 90-2 at ¶17). Later that day, Atrium Health sent Mr. Galle an email outlining the boilerplate terms in the offer including compensation, bonuses, and temporary housing allowances. (DE 90-11 at 5). Mr. Galle accepted the offer via email on June 27, 2019, and requested a formal offer on Atrium Health letterhead. (*Id.* at 4). Atrium Health then sent Mr. Galle a formal offer of employment via written letter on June 28, 2019. (DE 90-2 at ¶¶13–17; DE 90-2 (Atkinson Dep. Ex. 2) at 12). The offer was "contingent upon the completion of a successful background check and health assessment." (DE 90-2 at 13). There was no set duration of employment, however the offer noted that Mr. Galle would have to refund a prorated amount of the sign-on bonus if he terminated his employment within one year of starting. (*Id.*). Mr. Galle and Atrium Health agreed to a July 15, 2019 start date. At all times during offer and acceptance, Mr. Galle was communicating with Mr. Atkinson.

After Mr. Galle accepted the offer, Mr. Atkinson turned him over to Atrium Health's Talent

---

[2] It is unclear based on the record what Mr. Galle's disability is and whether Atrium Health knew the nature of the disability. However, Mr. Galle testified that he told Atrium Health that the disability "would not prevent me in my capacities in the position." (DE 90-5 (Galle Dep.) at 102:16–19).

3

Acquisition team for purposes of obtaining pre-hire paperwork, scheduling his teammate health assessment, initiating his background check, and coordinating temporary housing. (DE 90-2 at ¶20). On July 3, 2019, Mary Underdown, from the talent acquisition team, reached out to Mr. Galle regarding the onboarding process. (DE 90-10 (Underdown Dep.) at ¶4). As part of this process, Ms. Underdown presented Mr. Galle with temporary housing options sourced through Atrium Health's third-party housing vendor. (*Id.* at ¶6). On July 9, 2019, Mr. Galle informed Ms. Underdown that he needed a first-floor apartment for a service-connected disability. (DE 90-5 at 140:3–5; DE 90-10 at ¶6). Mr. Galle asserts this request for an accommodation "necessarily applied to [his] work environment as well." However, there are no facts showing he ever specifically requested a workplace accommodation. Ms. Underdown is the only Atrium Health employee he spoke to regarding temporary housing. (DE 90-2 at ¶14; DE 90-5 at 138:15–18, 161:5–162:5). According to Ms. Underdown, if Mr. Galle had asked for a first-floor work office this would not have been an issue as the HR Department is located in a single-story building. (DE 90-10 at ¶6). She further stated that she never communicated with Mr. Atkinson, or anyone else at Atrium Health, regarding Mr. Galle's search for temporary housing or his request for a first-floor apartment. (DE 90-10 at ¶7).

On July 10, 2019, Mr. Atkinson first became aware, through Korn Ferry, that Mr. Galle's background check revealed an issue with his education. (DE 90-2 at ¶21). Specifically, the background check flagged the United States Institute of Applied Knowledge—where Mr. Galle received his bachelors and masters—as an unaccredited institution of higher education that was a possible "diploma mill." (*Id.*; DE 90-13 (Background Check) at 16). Mr. Atkinson followed up with Mr. Galle and learned that he did not have a master's or bachelor's degree. (DE 90-2 at ¶¶21–23). Instead, Mr. Galle admits that he has a "master's certificate" and "bachelor's certificate" from

4

an unaccredited school as opposed to a degree.³ (DE 90-6 at 2–3; DE 90-5 at 53:4–18). Mr. Galle acquired the certificates without any dedicated course of study, without attending any classes, and was never assigned any course credits. (DE 90-2 at ¶23; DE 90-5 at 42:7–11, 58:8–16). To obtain a certificate from the Institute of Applied Knowledge, an applicant submits a portfolio that includes relevant work experience and past educational achievements. After reviewing the portfolio, if the applicant's portfolio is judged at a bachelor or master level, the applicant can obtain a certificate after paying the requisite cost. (DE 90 at FN 12). Mr. Galle attests that many veterans who may lack the academic credentials of their non-military peers obtain these certificates to help increase their job prospects after leaving the military. (DE 90-5 at 38:10–20).

On July 11, 2019, one day after the background check flagged Mr. Galle's lack of degrees and two days after Mr. Galle requested a first-floor apartment, Mr. Atkinson called Mr. Galle and rescinded the offer of employment with Atrium Health, informing Mr. Galle that he did not have the necessary education as provided in the job listing. (DE 90-2 at ¶23). This occurred four days before Mr. Galle's anticipated start date. During the call, Mr. Galle testifies that he asked whether the rescission had anything to do with his request for a first-floor apartment and that he was given no response to this question, other than that the rescission was because he lacked the required education. (DE 91-3 at 156:1–19). Atrium Health never issued Mr. Galle any work equipment or employee credentials, and Mr. Galle never performed any work for Atrium Health. (DE 90-2 at ¶25).

After receiving the call, Mr. Galle later sent an email to Atrium Health asking for the opportunity to go back and obtain a degree from an accredited university or for consideration for other positions. (DE 91-3 at 158:1–22). Mr. Galle believes he never misrepresented his

---

³ Mr. Galle also admits he does not have a standard MBA. (DE 90-5 at 65:21–22).

5

educational background. He further alleges "that no where in the requirements [for the job] does it state a Master's Degree 'from an Accredited University' is required." (DE 90-3 at 31).

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.* The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477

U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id.* at 249–50.

## III. DISCUSSION

It is not disputed that Mr. Galle is a decorated, combat disabled Marine veteran who courageously served in the Global War on Terror. However, this case does not turn on Mr. Galle's service, but on whether he possesses the required qualifications for an upper-level HR position at Atrium Health. He does not. As explained in detail below, Atrium Health's decision to rescind an offer of employment after learning that Mr. Galle was unqualified for the position does not unlawfully discriminate against a disabled veteran.

### A. USERRA Claim

USERRA "prohibits discrimination in employment on the basis of military service." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1012 (Fed. Cir. 2001) (citing 38 U.S.C. § 4311). Specifically, USERRA provides: "A person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, [or] retention in employment . . . on the basis of that membership . . . or obligation." *Id.* at § 4311(a). An employer violates USERRA by discriminating against a veteran in the employment context where the "uniformed services is a motivating factor in the employer's action." 38 U.S.C. § 4311(b)-(c). Thus, to succeed on a USERRA claim, an employee "bear[s] the initial burden of showing by a preponderance of the evidence that the employee's military service was 'a substantial or motivating factor' in the adverse employment action." *Sheehan*, 240 F.3d at 1013; *Kitlinski v. United States Dep't of Just.*, 994 F.3d 224, 230 (4th Cir. 2021) (granting summary judgment on employee's USERRA claim when no evidence

7

was offered to show that the employee's prior military service was a motivating factor in the adverse employment decision). "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Sheehan*, 240 F.3d at 1013; *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 314–15 (4th Cir. 2001) ("[A]n employer whose employment decision was motivated in part by an employee's military status is entitled to summary judgment if the employer can prove that the permissible reason for its employment decision, 'standing alone, would have induced it to make the same decision.'").

To survive summary judgment, Plaintiff must show that Atrium Health's decision to rescind his offer of employment was motivated by his prior military service and that, independent of any discriminatory animus, Atrium did not have a valid reason for rescinding the offer. Plaintiff argues that he is a disabled combat veteran and that he requested multiple accommodations relating to his service, after which his employment offer was rescinded, which shows that Atrium Health discriminated against him based on his military service. (DE 8).

Turning to the facts, the first potential request for an accommodation was the request for a first-floor apartment that Mr. Galle made to Ms. Underdown, who worked on the talent acquisition team and helped Mr. Galle with temporary housing. However, this was not work related and no one at Atrium Health that had hiring and firing authority knew that Mr. Galle made this request. Of note, Mr. Galle never requested any type of workplace accommodation.

Mr. Galle's second alleged request for an accommodation appears to be a request to Mr. Atkinson to consider him for other positions or allow him to go back to school, which was made after Atrium Health rescinded his offer of employment. Therefore, this cannot be a "motivating factor" in Atrium Health's decision as it occurred after the decision had already been made. Thus,

8

Mr. Galle has failed to show any facts, beyond conclusory allegations, that Atrium Health's decision to rescind his employment offer was motivated by any discriminatory animus toward veterans. Regardless, even assuming Mr. Galle could show the necessary animus, he cannot show that Atrium Health lacked an independent reason that, standing alone from any discriminatory animus, would have caused Atrium Health to make the same decision.

The undisputed evidence clearly shows that Mr. Galle was not qualified for the HR-SBP position. The job description for this role requires a master's "degree" in business administration or a related field. Mr. Galle admits that he does not have a master's degree, or even a bachelor's degree. Instead, Mr. Galle has a bachelor's "certificate" and a master's "certificate" from an unaccredited institution that functions as a diploma mill where students can quickly receive a certificate by submitting a resume and paying a fee without ever attending any classes or lectures. Mr. Galle himself admits these are not standard degrees. Moreover, the offer of employment was contingent on a successful background check. After the background check was conducted, Atrium Health learned that Mr. Galle lacked the necessary education. The next day Atrium Health informed Mr. Galle that it was rescinding the offer of employment because Mr. Galle did not have the necessary education for the position. This reason, that Mr. Galle was unqualified, standing alone, is sufficient to warrant summary judgment as it is valid and free of any discriminatory animus. *See Madden v. Rolls Royce Corp.*, 563 F.3d 636, 637–39 (7th Cir. 2009) (granting summary judgment for employer when employee lied about having a college degree).

Accordingly, viewing the evidence in a light most favorable to Mr. Galle, a reasonable jury could not find that Atrium Health violated the USERRA by discriminating against Mr. Galle based on his military service.

### B. ADA Claim

Plaintiff's second claim alleges discrimination and retaliation in violation of the ADA.

9

Case 3:20-cv-00391-RJC-DCK   Document 99   Filed 08/08/22   Page 9 of 20

While related, the Court will address each separately.

### 1. Discrimination

Pursuant to the ADA, no employer shall discriminate against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). To establish a claim for disability discrimination under the ADA, a Plaintiff must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000). Disability discrimination may be proven through direct and indirect evidence. *Schultz v. Royal Caribbean Cruises, Ltd.*, 465 F. Supp. 3d 1232, 1262 (S.D. Fla. 2020). Under this framework, a plaintiff seeking recovery pursuant to the ADA must first establish a prima facie case of discrimination. *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). Assuming the employer meets this burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons "were not its true reasons but were a pretext for discrimination." *Id.* at 143. The plaintiff always bears the ultimate burden of persuading the trier of fact that she was the victim of retaliation or discrimination. *Haulbrook*, 252 F.3d at 702.

Plaintiff contends Defendant discriminated against him for having a disability because Defendant rescinded an offer of employment after Plaintiff requested an accommodation for his service-related disability. Defendant argues that Plaintiff cannot meet the second and third

elements of a discrimination claim, mainly that he is not a qualified individual and that his offer was not rescinded because of a disability.

First, even though it is not addressed by the Parties, it is unclear based on the record whether Mr. Galle has a disability as a matter of law. "Disability" is defined by the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA provides a non-exhaustive list of major life activities, including "performing manual tasks," "walking," "standing," "concentrating," "thinking," and "working." *Id.* § 12102(2)(A). While the Amended Complaint repeatedly states that Mr. Galle is a combat disabled veteran, which in itself is a legal conclusion, nothing in the record or summary judgment briefing describes the nature of Mr. Galle's disability. (DEs 22, 89–94). Instead, the Court must infer Mr. Galle's disability based on his request for a first-floor apartment. However, it is not within the Court's purview to infer facts when deciding summary judgment. The Court is thus skeptical these facts, or lack thereof, are sufficient to establish a disability under the ADA sufficient to survive summary judgment. However, as the Parties do not dispute that Mr. Galle is disabled, the Court will continue its analysis.

Second, regardless of whether Mr. Galle is disabled under the statute, he cannot show that he was a "qualified individual." "A qualified individual with a disability is one who, with or without reasonable accommodation, can perform the essential functions of her job." *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000) (quoting 42 U.S.C. § 12111(8)) (internal quotations omitted). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). "The Supreme Court has interpreted

11

this provision to mean that a 'qualified' person must be 'able to meet all of a program's requirements in spite of his handicap.'" *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994) (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979)). This includes education requirements. *See* 29 C.F.R. § 1630.2(m) ("The term "qualified," with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position."). Here, the essential functions of the HR-SBP position require a master's degree in business administration or a related field, as stated in the written description of the job. It is undisputed that Mr. Galle lacked any type of master's degree, and no reasonable accommodation could overcome this.

Third, even if Mr. Galle was qualified and proved he was disabled, there are no facts, other than unsupported allegations, that the adverse employment decision was related to his disability. The undisputed facts show that Mr. Atkinson was in charge of hiring for the HR-SBP position. After Mr. Atkinson offered and Mr. Galle accepted the job, Mr. Atkinson handed him off to the talent acquisition team for onboarding purposes. This included setting up temporary housing. During this time, Mr. Galle told Ms. Underdown from the talent acquisition team that he wanted a first-floor apartment due to a disability. Ms. Underdown never told Mr. Atkinson, or anyone else at Atrium Health, this information. Thus, Mr. Atkinson's decision to rescind the offer of employment could not have been connected to Mr. Galle's request for a first-floor apartment. *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir.1991) (when the same person hires an employee and later is accused of taking an unlawful adverse action against that person, "a powerful inference" arises that the action "was not motivated by discriminatory animus"). Regardless, the request for a first-floor apartment was not specific, nor related to his work environment, as required under the ADA. *See* 29 C.F.R. § Pt. 1630.2(o) (defining "reasonable accommodation" as "[m]odifications

12

or adjustments to the work environment"); *see also D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1435 (2021) ("[T]he employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made by an employee.") (internal citations and quotations omitted).

Accordingly, viewing the evidence in a light most favorable to Mr. Galle, a reasonable jury could not find that Atrium Health violated the ADA by discriminating against him based on a disability.

### 2. Retaliation

The ADA provides that "no [employer] shall discriminate against any individual" for engaging in protected opposition or participation activity. 42 U.S.C. § 12203(a). "In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct or indirect evidence of retaliation, or proceed under a burden-shifting method." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001). A plaintiff need not show that she is disabled within the meaning of the ADA. *See id.* When proceeding under the burden-shifting method, she must show (i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took adverse employment action against her. *Id.*

Plaintiff contends that Defendant rescinded its offer of employment in retaliation against him after he asked for an accommodation for a service-related disability. Defendant argues that Plaintiff was not engaged in protected conduct and that, even if he was, he faced no adverse employment action because of that conduct.

First, Mr. Galle did not engage in protected conduct. The ADA "prohibits employers from retaliating against employees for engaging in conduct protected by the ADA, such as . . . requesting an arguably reasonable accommodation." *Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014)

13

(citing *A Society Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir.2011)). A reasonable accommodation is defined as "modifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o). Here, Mr. Galle never requested a workplace accommodation. His only affirmative request was for a first-floor apartment when discussing temporary housing options with a member of Atrium Health's talent acquisition team. This is unrelated to the "work environment" and does not qualify as a reasonable accommodation. Moreover, Mr. Galle's ex post facto argument that his first-floor apartment request "necessarily applied to [his] work environment as well" is unsupported by record evidence. (DE 22 at ¶34). Tellingly, Plaintiff cites to no facts showing that the first-floor apartment request was also a simultaneous work-related request. This aligns with Mr. Galle's deposition where he affirms that he told Mr. Atkinson that his service-related disability "would not prevent me in my capacities in the position." (DE 91-2 at 102:11–19).

Second, even assuming the request for a first-floor apartment was protected conduct in the form of a reasonable accommodation request, Atrium Health did not take an adverse employment action against him because of this protected conduct. As previously explained, Mr. Atkinson, who was responsible for hiring decisions at Atrium Health, was never aware that Mr. Galle asked Ms. Underdown for a first-floor apartment. Thus, there can be no causal link between Mr. Galle's request for a first-floor apartment and the decision to rescind the offer of employment as the person responsible for deciding to rescind the offer did not know of the request. Moreover, any argument that the request for consideration for other jobs, or the request to be allowed to go back to school and finish his degree, were reasonable accommodation requests are irrelevant as they were made after the offer was rescinded and, therefore, cannot be casually connected to the decision to rescind

14

the offer.

Third, as mentioned previously, Mr. Galle lacked the necessary education for the position and, one day after Atrium Health learned this, it rescinded his offer of employment. This was unrelated to Mr. Galle's request for a first-floor apartment and negates any causal connection between the request and the rescission. Nonetheless, even if Mr. Galle could show a prima facie case of retaliation, Atrium Health had a valid reason, independent of any protected conduct, for rescinding the offer—Mr. Galle was unqualified for the position. And Mr. Galle has cited to no record evidence that this was a pretext.

Accordingly, viewing the evidence in a light most favorable to Mr. Galle, a reasonable jury could not find that Atrium Health violated the ADA by retaliating against him based on his request for an accommodation.

### C. Breach of Contract and/or Breach of Public Policy Claim

Plaintiff's third claim is an interwoven claim for both breach of contract and breach of public policy. The Court will address each separately.

#### 1. Breach of Contract

"To state a breach of contract claim under North Carolina law, Plaintiff must plead (1) the existence of a valid contract and (2) a breach of that contract by Defendant." *T.W.T. Distrib., Inc. v. Johnson Prod. Co.*, 966 F. Supp. 2d 576, 580 (W.D.N.C. 2013) (citing *Parker v. Glosson*, 182 N.C. App. 229, 232 (2007)). "Under North Carolina law, employment is at-will." *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 585 (M.D.N.C. 2003) (citing *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331 (1997)). "Unless the employer and employee have entered into a contract specifying a definite term of employment, the employment relationship 'is presumed to be terminable at the will of either party without regard to the quality of performance of either party.'" *Id.* (quoting *Kurtzman*, 347 N.C. at 331).

15

Plaintiff alleges that the series of agreements memorialized in the June 28, 2019 offer letter created a valid employment contract and that Defendant breached the employment contract by rescinding the offer and refusing to compensate Plaintiff pursuant to the contract. (DE 22 at ¶¶61–71). Defendant argues that no enforceable contract was created with Plaintiff as the nature of the proposed employment was "at-will." Defendant also argues that, even if an enforceable contract was created, there was no breach as the offer was contingent on Mr. Galle passing a background check. (DE 91 at 19).

First, the "at-will" nature of the proposed employment relationship precludes Plaintiff's breach of contract claim. In North Carolina, when no set term of employment is specified, courts presume the employment relationship is "at-will" and terminable at the will of either party without regard to performance. *Kurtzman*, 347 N.C. at 331. Here, there was no set term of employment in the offer letter. Instead, the offer letter contemplated that the employment relationship could end at any time as it described what portion of the sign-on bonus Mr. Galle would have to repay if he left before one year. Plaintiff's counsel seems to admit as much, arguing paradoxically that the employment term is finite and "sufficiently clear" even though counsel cannot determine "whether it was three, six or twelve months." (DE 91 at 17). Hence, as there was no set term identifiable by either party, the presumptive "at-will" relationship controls, and Atrium Health could terminate the employment relationship at any time.

Second, even assuming there was an enforceable employment agreement for a set period of time in the offer letter, there was no breach for rescinding the offer of employment. Here, the offer letter included a contingency clause: "This offer is contingent upon the completion of a successful background check." The contingency clause allowed Atrium Health to rescind the offer if Mr. Galle failed the background check, which is indeed what occurred as the background check

16

revealed that Mr. Galle did not have the required master's degree. Atrium Health then rescinded the offer because Mr. Galle was unqualified. This was within Atrium Health's rights per the terms of the offer. Accordingly, because Atrium Health did not violate any terms in the offer letter, there can be no breach of contract.

Therefore, viewing the evidence in a light most favorable to Mr. Galle, a reasonable jury could not find that Atrium Health breached an employment contract.

### 2. Breach of Public Policy

The Amended Complaint alleges that Atrium Health violated public policy, specifically (1) North Carolina's Hospital Authorities Act, (2) North Carolina Human Resources Act, (3) the Vietnam Era Veterans' Readjustment Assistance Act of 1974, and (4) the North Carolina for Military Employment Initiative. (DE 22). Defendant argues that there is no violation of public policy. Plaintiff, through counsel, fails to attack Defendant's arguments, instead letting "the record speak for itself," making emotionally charged arguments without legal and factual support, and personally attacking counsel for Defendant. (DE 91-17). The Court admonishes such tactics, especially ad hominem attacks on opposing counsel as they are not appropriate nor germane to the legal issues.

Turning to the legal issues, the North Carolina Hospital Authorities Act ("NCHAA") authorizes municipalities to construct, operate, and maintain hospitals. *See* N.C. GEN. STAT. § 131E-5. Pursuant to the NCHAA, a hospital authority such as Atrium Health has the power to "appoint . . . any and all other employees necessary or advisable, to fix their compensation, to adopt necessary rules governing their employment, and to remove employees." N.C. GEN. STAT. § 131E-23(a). To that end, "[a] public hospital may . . . adopt personnel policies and procedures . . . to enhance the ability of a public hospital to hire and retain employees." N.C. GEN. STAT. §

17

131E-257.1(b)(1). As such, the NCHAA allows Atrium Health to adopt its own personnel policies and procedures. *Id.* Outside of lawfully rescinding an offer of employment, Plaintiff has alleged no facts showing how Atrium Health violated this act, which specifically gives municipal hospitals authority to hire, fire, and adopt personnel policies and rules. Applied to the present facts, setting forth minimum education requirements for high-level positions would certainly fall under actions that municipal hospitals are allowed to undertake.

Similarly, Atrium Health did not breach public policy by violating the North Carolina Human Resources Act ("NCHRA"). It is a policy of the NCHRA that "veterans shall be granted preference in employment for positions subject to the provisions of this Chapter with every State department, agency, and institution." N.C. GEN. STAT. § 126-80. However, Atrium Health is not subject to the NCHRA because it is a municipal hospital, not a state institution. N.C. GEN. STAT. § 126-1. Thus, it cannot violate this statute. Regardless, even if Atrium Health was subject to this act, there was no violation. The NCHRA provides for the adoption of rules to implement the veteran preference policy. N.C. GEN. STAT. § 126-82(d)-(e). One such rule, promulgated in the North Carolina Administrative Code which governs human resources, states: "In order to claim veterans' preference . . . eligible veterans shall meet the minimum qualifications . . . for the position." 25 N.C.A.C. 01H.1102. "Qualifications include[e] training, experience, competencies and knowledge, skills and abilities." 25 N.C.A.C. 01H.0635. Here, it is undisputed Mr. Galle lacked the minimum qualifications. Therefore, there can be no breach of public policy under the NCHRA.

Atrium Health also is not covered by the Vietnam Era Veterans' Readjustment Assistance Act of 1974. This act provides that parties contracting with the United States government for contracts over $100,000 should take affirmative action to hire veterans. 38 U.S.C. § 4211-12.

18

Plaintiff has failed to plead facts showing how Atrium Health is a federal contractor or how they failed to take affirmative action to hire veterans. Moreover, Plaintiff has failed to show how rescinding a contingent offer of employment upon discovering the candidate was unqualified violates this act.

Finally, the North Carolina for Military Employment Initiative is not a federal or state statute and is instead an initiative of the North Carolina Veterans Foundation, which is a nonprofit organization. While its goal to increase veteran employment within the state is laudable, this initiative cannot sustain a breach of public policy claim as this is not an express declaration contained in North Carolina statutes. *See Brewer v. Jefferson-Pilot Standard Life Ins. Co.*, 333 F. Supp. 2d 433, 438 (M.D.N.C. 2004) ("While there is no set definition of public policy, at the very least, public policy is violated where an employer terminates an employee in contravention of express policy declarations contained in the North Carolina General Statutes.") (internal citations omitted); *Buser v. S. Food Serv., Inc.*, 73 F. Supp. 2d 556, 566–68 (M.D.N.C. 1999) (explaining that the public policy exception to the employment at-will doctrine is a narrow one); *McDonnell v. Guilford Cty. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677-678 (2009) ("To prevail on a claim for unlawful termination in violation of public policy a plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee.") (internal citations omitted).

Therefore, viewing the evidence in a light most favorable to Mr. Galle, a reasonable jury could not find that Atrium Health breached a public policy.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment, (DE 89), is **GRANTED**. Mr. Galle is **COMMENDED** for his service.

**SO ORDERED**.

19

Case 3:20-cv-00391-RJC-DCK   Document 99   Filed 08/08/22   Page 19 of 20

The Clerk is directed to close this case.

Signed: August 8, 2022

Robert J. Conrad, Jr.
United States District Judge